IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CODY GROUP, L.L.C., a Utah limited liability company,<br><br>               Plaintiff,<br><br><br>       vs.<br><br><br>RIVERBANK OIL TRANSFER, L.L.C.,<br>           Defendant. | ORDER AND MEMORANDUM DECISION<br><br><br><br>Case No. 2:05 CV 964 TC |

Plaintiff Cody Group, LLC, filed this lawsuit claiming that Defendant Riverbank Oil Transfer, LLC, has improperly refused to pay Cody Group for various services involving the use and movement of rail cars.  Riverbank Oil, a Washington LLC domiciled in Riverbank, California, has moved to dismiss the lawsuit, asserting that its contacts with Utah are so minimal that this court cannot properly assert personal jurisdiction over it.  In any event, Riverbank Oil claims that this court provides an inappropriate venue for resolution of the parties dispute and that the case should be transferred to California if not dismissed.

After considering the submissions of the parties and the evidence offered at the evidentiary hearing held in this matter, the court concludes that it may properly assert personal jurisdiction over Riverbank Oil.  Further, this venue is appropriate and a transfer of this action to

California is unwarranted.  Accordingly, the court denies the motion to dismiss.[1]

## Background

Riverbank Oil is in the business of selling used oil.  It accepts used oil at its California facility, transfers that oil into rail cars, and then ships the used oil to various oil processors in the Pacific Northwest.  Riverbank Oil's customers then process the used oil and reuse it for various purposes.  A critical component of Riverbank Oil's business operation is the rail cars themselves.  While some of Riverbank Oil's customers provided their own rail cars, Riverbank Oil also acquired rail cars.  It is Riverbank Oil's financing of its rail cars that is at the heart of this lawsuit.

Fairly early on in the establishment of Riverbank Oil's business, discussions between Riverbank Oil and Cody Group occurred and the parties began exploring the possibility of Riverbank Oil renting rail cars from Cody Group.  Cody Group is a Utah limited liability company with its principal place of business in Utah.  There is a conflict concerning which party initiated contact regarding the proposed agreement.  William Newton Cundiff, the operations manager of Riverbank Oil, testified that he was contacted by Robert Elbert, the managing member of Cody Group, and that Mr. Elbert was the first to suggest that Cody Group supply Riverbank Oil with rail cars.  In contrast, Mr. Elbert testified that he was contacted by Jack Dahlgren, who identified himself as a principal of Riverbank Oil, and expressed to Mr. Elbert that Riverbank Oil was interested in acquiring rail cars.

---

[1]There are currently two motions to dismiss before the court.  Shortly after Riverbank Oil moved to dismiss this action, Cody Group filed an amended complaint.  The filing of the amended complaint rendered Riverbank Oil's motion to dismiss moot, as it sought dismissal of superceded complaint.  Accordingly, Riverbank Oil filed another motion to dismiss attacking the amended complaint.  The arguments raised in the second motion to dismiss are identical to those raised in the first motion to dismiss.

Mr. Elbert also testified that he personally loaned Mr. Dahlgren $10,000 with the understanding that Mr. Dahlgren would use the money to accelerate the start-up of Riverbank Oil.  Specifically, Mr. Elbert understood that the money would be used to secure telephone service, and other necessary services and equipment.  In his deposition, Mr. Dahlgren testified that he did receive $10,000 from Mr. Elbert and that the money was intended to serve as start-up capital for Riverbank Oil.  But Mr. Cundiff disputes the characterization of the loan to Mr. Dahlgren.  Mr. Cundiff testified that Mr. Dahlgren did provide Riverbank Oil with some capital in exchange for a stake in the company, but that Riverbank Oil was not aware of the source of Mr. Dahlgren's financial contribution.

A short time after the parties first began exploring the possibility of forging a business relationship, Mr. Elbert traveled to Riverside, California, to visit Riverbank Oil's facility.  But the parties dispute whether an agreement between the companies had been reached before Mr. Elbert's trip or whether final agreement was reached while Mr. Elbert was in California.  Mr. Cundiff asserts that all material terms were negotiated and agreed to while Mr. Elbert was in California.  Mr. Elbert testified to his belief that the parties' agreement was already in place by the time he visited the Riverbank Oil facility.  Despite the confusion surrounding the initiation of negotiations and the timing of the ultimate consummation of those negotiations, the parties do agree that an agreement was reached.

Because Riverbank Oil was a new company without an established credit record, Cody Group determined that it would have to lease rail cars and then sublease those cars to Riverbank Oil.  The testimony indicated that management of rail car movement, as well as adjustments to the number of cars leased by Cody Group to Riverbank Oil, resulted in periodic contact between the two companies.  This contact typically took the form of Riverbank Oil contacting Cody

3

Group to seek adjustment of the number of rail cars and to organize the movement of those rail cars.[2]  Further, to aid its compliance with regulations imposed by the State of California, Riverbank Oil requested that Cody Group provide a bill of lading before a rail car was moved from Riverbank Oil's facility.  When a bill of lading was required, Riverbank Oil would contact Cody Group, which would create the bill of lading and then fax a copy to Riverbank Oil.

Over the course of the parties' dealings, which lasted well over a year, Riverbank Oil contacted Cody Group in Utah approximately 150 times.  Additionally, Cody Group sent bills of lading and invoices from Utah to California and Riverbank Oil submitted payments on those invoices to Utah.  Cody Group filed this lawsuit claiming that Riverbank Oil has failed to pay all money owed under the agreement.

Riverbank Oil submits that its contacts with Utah are too insignificant to allow this court to assert personal jurisdiction over it.  Alternatively, Riverbank Oil contends that even if personal jurisdiction is present, this venue is improper because all of the substantial events that gave rise to this lawsuit occurred outside the State of Utah.  Finally, Riverbank Oil argues that even if this is an acceptable venue, the court should nevertheless transfer this action to California for the convenience of the parties.

## Analysis

### I. Personal Jurisdiction

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show both that jurisdiction is proper under the laws of the forum state and that the

---

[2]Mr. Cundiff and Mr. Dahlgren did travel to Utah during the time period that Riverbank Oil and Cody Group were in business together.  The two men met Mr. Elbert in Salt Lake City, Utah, and then drove a rented car to Idaho to explore whether an Idaho company would be interested in purchasing oil.  Mr. Cundiff testified that the trip had no relation to Riverbank Oil, but was financed by Hood River Partnership, an entirely different business venture that was interested in brokering oil.

exercise of jurisdiction would not offend due process."  Intercon, Inc. v. Bell Atlantic Internet

Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000).  Because Riverbank Oil has contested the

jurisdiction of this court, Cody Group has the burden of establishing that jurisdiction is proper.

See, e.g., Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995).  Cody Group argues

that the subject matter of this suit is related to Riverbank Oil's contacts with this state.

Accordingly, it is necessary to determine whether Cody Group has shown that this court can

assert specific, rather than general, personal jurisdiction over Riverbank Oil.  See Trierweiler v.

Croxton & Trench Holding Corp., 90 F.3d 1523, 1532-33 (10th Cir. 1996) (stating that general

jurisdiction lies only when a defendant's contacts with a state are "continuous and systematic,"

such that it is not unfair for the state to exercise personal jurisdiction over the defendant even if

the suit is unrelated to the defendant's contacts with the forum state).  The appropriate course of

inquiry under Utah law is well established:

> The evaluation of specific jurisdiction in Utah mandates a three-party inquiry: (1)
> the defendant's acts or contacts must implicate Utah under the Utah long-arm
> statute; (2) a "nexus" must exist between the plaintiff's claims and the defendant's
> acts or contacts; and (3) application of the Utah long-arm statute must satisfy the
> requirements of federal due process.

Soma Med. Int'l v. Std. Chtd. Bank, 196 F.3d 1292, 1297 (10th Cir. 1999) (internal quotation

omitted).  Riverbank Oil contends that the claims in this suit do not implicate Utah's long-arm

statute and that assertion of personal jurisdiction over it would violate federal due process.

The Utah State Legislature has expressed its intent "to assert jurisdiction over nonresident

defendants to the fullest extent permitted by the due process clause of the Fourteenth

Amendment to the United States Constitution."  Utah Code Ann. § 78-27-22.  The Utah Supreme

Court has upheld that policy.  SII MegaDiamond, Inc. v. Am. Superabrasives Corp., 969 P.2d

430, 433 (Utah 1998).  Given the broad interpretation to be given to Utah's long-arm statute, "[i]t

is frequently helpful to undertake the due process analysis first, because any set of circumstances that satisfies due process will also satisfy the long-arm statute." Systems Designs, Inc. v. New Customware Co., Inc., 248 F. Supp. 2d 1093, 1097 (D. Utah 2003) (citing SII MegaDiamond, 969 P.2d at 433; Soma Med. Int'l v. Standard Chartered Bank, 196 F.3d 1292, 1298 (10th Cir. 1999); Far West Capital, Inc. v. Towne, 46 F.3d 1071, 1075 (10th Cir. 1995)).

The Due Process Clause of the Fourteenth Amendment permits a federal court sitting in diversity "[to] exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). "The sufficiency of a defendant's contacts must be evaluated by examining the defendant's conduct and the connections with the forum state to assess whether the defendant has 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State.'" First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc., 820 F.2d 1127, 1130-31 (10th Cir. 1987) (brackets in original) (quoting Hanson v. Denckla, 357 U.S. 235, 237 (1958)).

While Riverbank Oil concedes that it did have contacts with Cody Group, it asserts that "[a]ny contacts that Riverbank Oil may have had with the State of Utah were random, fortuitous and attenuated." (Reply Memo. in Supp. of Mot. to Dismiss 7 (dkt. #7).)  The evidentiary record does not support Riverbank Oil's assertion.

Presumably, Riverbank Oil is endeavoring to equate the present case with STV International Marketing v. Cannondale Corp., 750 F. Supp. 1070 (D. Utah 1990).  In STV, the court concluded that it could not assert jurisdiction over the defendant even though the defendant entered into a marketing agreement with a Utah corporation.  Id. at 1071, 1078.  The court acknowledged that the defendant had made phone calls to Utah and on two occasions discussed

the parties' business arrangement while in Utah for other purposes.  Id. at 1071-72.  Riverbank

Oil claims that its contacts with Utah are similar to those of the defendant in STV.  It bolsters

this assertion by citing to Rambo v. American Souther Insurance Co., 839 F.2d 1415 (10th Cir.

1988), for the proposition that "[t]he existence of letters or telephone calls to the forum state

related to the plaintiff's action will not necessarily meet due process standards."  Id. at 1418.

Riverbank Oil's argument fails to take account of the nature of its contacts with Utah.  As

the Tenth Circuit stated in Rambo, "[c]ertainly, telephone calls and letters may provide sufficient

contacts for the exercise of personal jurisdiction."  Id.  The Tenth Circuit went on to clarify that

"[t]he proper focus for analyzing these contacts is whether they represent an effort by the

defendant to 'purposefully avail[] itself of the privilege of conducting activities within the forum

State.'"  Id. at 1419 (quoting Hanson, 357 U.S. at 253).

It is the nature of the contacts, not the manner in which the contacts were made, that

distinguishes this case from STV.  In STV, the court concluded that the dispute between the

parties did not directly implicate Utah in any meaningful manner.  See 750 F. Supp. at 1078.  The

defendant in STV argued that the parties dispute was, in substance, "an entirely

Europe/Connecticut transaction, and that contact with Utah were not only relatively minuscule in

quantity, but were tangential to the parties' relationship."  Id.  The court agreed, stating that

"[t]he 'economic realities' in the case at bar are such that the defendant has very few economic

ties with the State of Utah."  Id.

The economic realities of this case are different.  Riverbank Oil's assertion that the

parties' present dispute is a California transaction, only tangentially involving Utah, is simply

contradicted by the record.  Rather, two companies, one in Utah and one in California, engaged

in continuous and systematic contact for well over a year.  The parties exchanged information,

coordinated business activities, submitted and received invoices, and Riverbank Oil submitted payments to Cody Group in Utah. The contacts with Utah were directly aimed at furthering the business relationship between the two parties.

Viewed in their totality, the facts of this case indicate that Riverbank Oil purposefully established substantial contacts with Utah. By taking those steps, Riverbank Oil was on notice that any potential conflict between the parties arising from their business dealings might end up in front of a Utah tribunal. See Pro Axess, Inc. v. Orlux Dist., Inc., 428 F.3d 1270, 1277-78 (10th Cir. 2005) (holding that totality of facts supported finding of purposeful availment when a French corporation contacted a Utah corporation and entered into a contract with that corporation, services were performed in Utah, and the parties exchanged "numerous faxes, letters, and phone calls."); Cf. SII Megadiamond, Inc. v. Am. Superabrasives Corp., 969 P.2d 430, 435-36 (Utah 1996) ("Any nonresident business that confirms that it intends to act as a national and international distributor for a Utah business and then places hundreds of purchase orders for goods that are to be shipped and invoiced from Utah, with full knowledge that it must perform its part of the bargain by paying for the goods in Utah[,] should not be surprised when it gets haled into court after it fails to pay no fewer than 170 invoices." (internal quotation omitted)).

Even if a defendant's actions satisfy the minimum contacts test, however, a court must still consider whether "the exercise of personal jurisdiction over defendant would offend traditional notions of 'fair play and substantial justice.'" Intercon, 205 F.3d at 1247 (internal citations omitted). The Tenth Circuit has identified the following five factors to consider when determining whether notions of fair play and substantial justice will be offended by the exercise of personal jurisdiction:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

Pro Axess, 428 F.3d at 1279-80 (internal quotation omitted).  "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985).

Riverbank Oil has presented no persuasive evidence or argument to indicate that notions of fair play would be violated by allowing Cody Group to pursue its claims in Utah.  The court notes that Cody Group is seeking damages in excess of $100,000.00.  In upholding the exercise of personal jurisdiction in SII Megadiamond, the court noted that "[w]here the amount in controversy . . . is substantive compared to the costs of litigating the action, there is only minimal possibility of defendants defaulting on the basis that they cannot afford to litigate in the forum." 969 P.2d at 436 (internal quotation omitted).  In that case, the plaintiff was seeking $118,000.00 in damages.  Id.  Further, "[s]tates have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors."  Pro Axess, 428 F.3d at 1280 (internal quotation and citation omitted).

The court concludes that consideration of the first two factors identified in Pro Axess lend support to the conclusion that allowing Cody Group to prosecute its claims in Utah will not violate notions of fair play and substantial justice.  The additional Pro Axess factors either minimally support this forum's retention of this matter or do not materially favor one party more than another.  But when all five factors are considered, the court is convinced that notions of fair

9

play and substantial justice will not be offended by exercising personal jurisdiction over Riverbank Oil.

## II. Improper Venue

Riverbank Oil claims that even if this court can assert personal jurisdiction over it, this court is nevertheless an improper venue for the resolution of the parties' dispute.  The United States Code provides that a diversity suit may be heard in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(a).

Riverbank Oil argues that "all substantial alleged events or omissions giving rise to this lawsuit occurred outside of Utah."  (Memo. in Supp. of Mot. to Dismiss 8 (dkt. #3).)  As just discussed, Riverbank Oil's assertion does not comport with the evidence.  Both parties actively participated in the business relationship and a large number of events in relation to the parties' business relationship unfolded in Utah.  Accordingly, venue is appropriate in this court under 28 U.S.C. § 1391(a).

## III. Transfer

Riverbank Oil's final argument is that this case should be transferred to California as a matter of convenience.  The United States Code states that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  When deciding whether to transfer an action, several factors must be considered.

First, the plaintiff's choice of forum.  Second, the access of witnesses, including the availability of compulsory process to insure attendance of witnesses, as well as other sources of evidence.  Third, the cost associated with presenting the required evidence in the case.  Fourth, the enforceability of a judgment if one is obtained.  Fifth, the relative advantages and obstacles to a fair trial.  Sixth, any

10

difficulties that may arise from congested dockets.  Seventh, the possibility of the
existence of issues arising in the area of conflict of laws.  Eighth, the advantage of
having a local court determine questions of local law.  And, ninth, all other
considerations of a particular nature that make a trial easy, expeditious and
economical.

Star Stone Quarries, Inc. v. Garland, 300 F. Supp. 2d 1177, 1182 (D. Utah 2003) (citing Chrysler

Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1516 (10th Cir. 1991); Recovery

Processes v. Hoechst Celanese Corp., 857 F. Supp. 863, 866 (D. Utah 1994)).

Consideration of the above factors does not support a transfer of this action: (1) Cody

Group chose this forum to litigate its dispute; (2) it is apparent from the filings of the parties that

a substantial amount of evidence, both witnesses and documents, is present in both Utah and

California, making it of near-equal inconvenience to litigate this dispute in California; (3) the

nature of the claims indicates that the cost of presenting evidence will be approximately the same

in either state.  Additional considerations do not weigh heavily in favor of one forum over

another. For example, it remains undetermined whether Utah or California law will apply, and

there is no indication of a potential conflict of laws issue in any event.  Accordingly, the court

declines Riverbank Oil's request that this matter be transferred to California.

**Conclusion**

The evidence establishes that Riverbank Oil purposefully availed itself of Utah and

maintained substantial, systematic contacts with Utah.  Requiring Riverbank Oil to defend itself

in a Utah court will not offend traditional notions of fair play.  Further, venue is proper in this

court because a substantial amount of the events leading to this litigation occurred in Utah.

Finally, a transfer of this case to California is not warranted under the circumstances.  Therefore,

Riverbank Oil's Motion to Dismiss and Request for Oral Argument (dkt. #2) is DENIED as

moot, and Riverbank Oil's Motion to Dismiss First Amended Complaint (dkt. #8) is DENIED.

11

DATED this 6th day of September, 2006.

BY THE COURT:

TENA CAMPBELL
United States District Judge